IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STANTON SILLAS,<br><br>    Plaintiff,<br><br>v.<br><br>DR. PERCY MEYER, TAMMY STEVENS, DR. DAVID, JOHN BARWICK, LESLIE KLUGE, REBECCA ANDERS, MELISSA OLGE, DEBRA CRAM, KELLY RISON, WEXFORD HEALTH SOURCES, INC., and ILLINOIS DEPARTMENT OF CORRECTIONS,<br><br>    Defendants. | Case No. 24-cv-1778-NJR |

# MEMORANDUM AND ORDER

**ROSENTENGEL, Chief Judge:**

    Plaintiff Stanton Sillas, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Vienna Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Sillas alleges that Defendants were deliberately indifferent to his medical needs and retaliated against him when he complained about his medical care.

    This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which

1

relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

While in prison, Sillas had surgery for a left knee injury. As a result, he was required to wear a full knee/leg brace and use crutches to walk around (Doc. 1, p. 4). In June 2023, Sillas was housed in the healthcare unit for his injury but was required to walk on his own to the shower in the healthcare unit because he lacked the help of an assistant (*Id.*). Sillas alleges that Nurse Practitioner ("NP") Tammy Stevens, Leslie Kluge, and Dr. Percy Meyer failed to appoint Sillas an ADA assistant despite several requests for one (*Id.*). Although the shower was equipped for ADA inmates, there were two ADA chairs in the small shower, with very little room to move around (*Id.*). Without the use of an assistant, Sillas tried to maneuver around the chairs in order to sit down, but his brace became entangled in the chair and he fell (*Id.*). Sillas injured his right knee in the fall, tearing ligaments and muscles (*Id.*).

After several days of complaining about the pain in his right knee, on June 20, 2023, Sillas received a CT scan (Doc. 1, p. 4). On June 22, 2023, Sillas met with NP Stevens about his injuries. She informed Sillas that he had ligament damage in his right knee, and he would be referred out to Dr. Barr for further care (*Id.* at p. 5). On July 7, 2023, Sillas attended an appointment with orthopedic provider Gretchen Mason (*Id.*). She examined Sillas and informed the correctional officers transporting Sillas that he would need an MRI of his right knee and leg.

Sillas alleges that after his injury, medical staff at the prison informed him that he would receive an assistant for the shower, but he never received the requested assistant (*Id*. at p. 5). Sillas notes that inmates at Vienna previously received ADA helpers, but Tammy Stevens started denying the positions to inmates in the healthcare unit at Vienna despite assistants still being offered at other prisons (*Id*. at p. 6). He alleges that Stevens eliminated the position at Vienna on the belief that nurses would assist the inmates (*Id*.). But Sillas alleges that staff refused to provide help to inmates (*Id*.).

On July 8, 2023, Sillas complained to nursing staff that he still had excruciating pain in his right knee, but his complaints were ignored (*Id*. at p. 5). On July 20, 2023, Sillas specifically complained to RN Rebecca Anders (*Id*.). She called the facility doctor and received an order for a lidocaine patch for the pain. Sillas alleges that the patch failed to relieve his pain (*Id*.). On July 24, 2023 the doctor at Vienna prescribed Voltaren pain cream for Sillas's right knee and leg but the cream also failed to relieve his pain (*Id*.). On July 29, 2023, Sillas again complained of excruciating pain to RN Anders and asked for a shot of pain medication (Doc. 1, p. 5). She requested permission from Dr. Meyer to administrator the pain shot, but Dr. Meyer denied the request (*Id*.).

On August 1, 2023, Sillas received an MRI of his right leg. On August 10, 2023, Sillas had another appointment with the orthopedic clinic, and he learned that he suffered from a quad tendon tear (*Id*.). The doctor at the clinic suggested that an earlier MRI would have prevented the pain Sillas experienced during the delay in receiving the MRI (*Id*.). While at the orthopedic clinic, NP Mason called the Vienna healthcare unit and informed officials that Sillas needed immediate surgery (Doc. 1, p. 6). Mason also informed Sillas

3

that his continued pain was due to staff's failure to obtain immediate care for his injury. Sillas alleges that Mason told him that delays in scheduling were the fault of Tammy Stevens, Dr. Meyer, and the Wexford medical staff (*Id.*). He also blames the delays in scheduling his immediate referral and appointments with outside providers on the cost-saving policies of Wexford (*Id.* at p. 9).

Sillas notes that he eventually received surgery for his right knee (Doc. 1, p. 7). After the surgery, the orthopedic physician ordered physical therapy sessions for both Sillas's right and left knee. But Sillas alleges that medical providers delayed ordering physical therapy sessions in accordance with Wexford's cost-saving policies (*Id.*). Sillas was required to self-administer his own physical therapy until he wrote a grievance. He alleges the grievance forced the defendants and employees of Wexford to send him out to an outside therapist for physical therapy (*Id.*). But Sillas alleges that the number of off-site therapy sessions was limited in order to save the company money (*Id.* at p. 8).

Sillas also alleges that medical staff retaliated against him for complaining about his medical care (Doc. 1, p. 7). Sillas alleges that medical staff denied him showers, denied him access to the healthcare unit observation room, and cancelled his sick call requests (*Id.*). On April 3, 2024, Sillas went to the healthcare unit in order to shower and participate in his self-administered physical therapy (*Id.* at p. 8). After his shower, he received his therapy bands from RN Kelly Rison, and she instructed him to conduct his exercises in the observation room where staff could monitor him (*Id.*). But after he filed a grievance about his medical issues on April 10, 2024, staff started to harass him (*Id.*). For instance, while in the observation room conducting his normal physical therapy, RN Anders told

4

him that he could not be in the observation room for therapy (*Id.*). RN's Melissa Olge and Debra Cram also informed Sillas he could no longer take his showers in the healthcare unit or participate in therapy in the observation room (*Id.*). He learned from counselor Slare-Hal that staff complained that Sillas lacked a call pass for his showers and therapy (*Id.*). Sillas contends these allegations are false and in retaliation for his grievances.

On April 15, 2024, Sillas attended a physical therapy session at Anna Hospital and was told by the therapist that he would need to continue off-site therapy sessions for his torn tensions (*Id.* at p. 10). The therapist also told the transporting correctional officer and the officer provided medical staff with the therapist's paperwork (*Id.* at pp. 10-11). Sillas contends, however, that NP Bailey lied and said that she spoke to the physical therapist and no further off-site sessions were required (*Id.* at p. 11). The following week, Sillas met with Stevens, Bailey, and Dr. England and, once again, the healthcare officials claimed that the physical therapist ended the sessions (*Id.*). Sillas informed the medical staff of the physical therapist's statements about continuing physical therapy, but Sillas's therapy sessions were discontinued. Sillas alleges that he continues to walk with a noticeable limp and is still in pain because of the denial of additional therapy sessions (*Id.*).

## Preliminary Dismissals

Sillas identifies numerous individuals of his statement of claim that participated in his care. He alleges that Dr. England, NP Bailey,[1] and various unnamed Wexford

---

[1] Sillas also alleges that NP Bailey denied him care for a cough and chest pain. From December 2023 to January 2024, Sillas complained of a cough and chest pain. Although he sought medical care from Bailey, she cancelled his sick call pass without explanation. Sillas alleges that the delay

5

medical and nursing staff denied and delayed care for his injuries. Although Sillas mentions these individuals in the body of his Complaint, he fails to identify any of them as defendants in the case caption. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption"). Thus, any potential claims against these individuals are **DISMISSED without prejudice**.

Sillas also identified the IDOC as a defendant, but IDOC is an agency of the state and immune from liability. *Nunez v. Ind. Dep't of Child Servs.*, 817 F.3d 1042, 1044 (7th Cir. 2016) ("The Eleventh Amendment grants states immunity from private suits in federal courts without their consent. An agency of the state receives this same immunity."); *Julio de Lima Silva v. Dep't of Corrections*, 917 F.3d 546, 565 (7th Cir. 2019). Thus, any claim against IDOC is **DISMISSED with prejudice**.

Sillas also fails to state a claim against Dr. David. Sillas merely alleges in conclusory fashion that Dr. David, through his inactions and omissions, acted with deliberate indifference in treating his knee injury (Doc. 1, p. 9). He fails to allege, however, when he saw Dr. David and what treatment, if any, the doctor provided to Sillas. Without more, Sillas's conclusory statements against Dr. David fail to state a claim. Any potential claim against Dr. David is **DISMISSED without prejudice**.

---

caused his condition to worsen and he eventually required a shot and an inhaler with steroids to treat his condition (*Id.*). Sillas failed to identify Bailey as a defendant in the case caption, and these allegations appear to be unrelated to his claims regarding the treatment of his knee injuries. To the extent Sillas seeks to pursue a deliberate indifference claim regarding the treatment of his cough and chest pain against Bailey, he would need to file a new lawsuit after exhausting his administrative remedies.

Sillas also alleges that Defendants failed to protect him from further injury after his surgery. He alleges that the failure to follow the recommendations of outside specialists for Sillas to participate in outside physical therapy could have led to Sillas injuring himself (Doc. 1, p. 15). He alleges that Defendants were also deliberately indifferent to potential self-harm because staff failed to help him with his physical therapy sessions. Sillas further alleges that Dr. Meyer, Dr. David, Stevens, and Kluge failed to supervisor or instruct staff in helping Sillas with his therapy sessions. In order to state an Eighth Amendment failure to protect claim, a plaintiff must allege that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) defendants "acted with deliberate indifference to that risk." *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). A plaintiff also must show that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing "that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). There are simply no allegations indicating that any official was aware of a threat to Sillas's safety from his physical therapy. Nor can the officials be liable for failing to supervisor the nurses in assisting Sillas in his therapy. Thus, Sillas fails to state a viable failure to protect claim.

Sillas also fails to state a claim against RN Kelly Rison. Although he alleges that she acted with deliberate indifference to his medical needs, he only states in conclusory fashion that she acted with deliberate indifference. His allegations, however, indicate that Rison provided him with therapy bands, and she allowed him into the observation room to perform his exercises when other nurses later denied him access (Doc. 1, p. 8). There

7

are simply no allegations suggesting that Rison acted with deliberate indifference. Thus, Sillas's claim against Rison is also **DISMISSED without prejudice**.

Sillas also alleges that Warden John Barwick should be liable for "acting…in conjunction" with the other defendants. He notes that Barwick was in charge of the health, safety, and welfare of inmates at Vienna. But there are no allegations to suggest that Barwick was personally involved in Sillas's care, nor can he be held liable in his role as a supervisor because the doctrine of *respondeat superior* does not apply to Section 1983 claims. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). There are also no allegations suggesting that Barwick was aware of Sillas's injuries or his need for care. *See Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating that the relevant inquiry is whether defendants "actually knew about the plaintiff's condition, not whether a reasonable official should have known"). Thus, any claim against Barwick is also **DISMISSED without prejudice**.

Finally, Sillas fails to state a claim for indemnification under Illinois States Law. Sillas cites to 745 ILCS 10/2-302, but that statute simply allows for a local entity to appear and defend on behalf of an employee of a local public entity. The statute is not applicable to Sillas's claims against state employees. Thus, his indemnification claim is also **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

8

> **Count 1:** Eighth Amendment deliberate indifference claim against Tammy Stevens, Leslie Kluge, Rebecca Anders, Melissa Olge, Debra Cram, and Percy Meyer for delaying and denying care for Sillas's left and right knee injuries.
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Tammy Stevens, Leslie Kluge, and Dr. Percy Meyer for denying Sillas's request for an ADA assistant.
>
> **Count 3:** ADA and/or RA claim for defendants' failure to provide Sillas with an ADA assistant.
>
> **Count 4:** First Amendment retaliation claim against Rebecca Anders, Melissa Olge, and Debra Cram for denying Sillas access to the healthcare unit showers and observation room in response to Sillas filing grievances about his medical care.
>
> **Count 5:** Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. for having cost saving policies and practices which led to the delay and denial of care for Sillas's injuries.
>
> **Count 6:** Illinois state law claim for intentional infliction of emotional distress against Dr. Percy Meyer, Tammy Stevens, Leslie Kluge, Rebecca Anders, Melissa Olge, and Debra Cram.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

---

[2] This also includes Sillas's claim for negligence under the Eighth and/or Fourteenth Amendment, and any due process and equal protection claims under the Fourteenth Amendment. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

**Count 1**

At this stage, Sillas states a viable claim for deliberate indifference against Tammy Stevens, Leslie Kluge, and Dr. Percy Meyer. He alleges that they delayed scheduling him for treatment after the injury to his right knee and delayed his access to physical therapy. They also denied him pain medication on certain occasions.

Sillas also states a claim against Rebecca Anders, Melissa Olge, and Debra Cram for deliberate indifference. He alleges that the nurses refused to allow him to conduct his physical therapy in the observation room, nor did they assist him in his therapy.

But to the extent that Sillas alleges Rebecca Anders failed to provide him with pain medication, he fails to state a claim. Sillas alleges that after his knee injury, he complained to her about pain. But he notes that Anders provided him with medical care. On July 20, 2023, she prescribed him a lanacain patch (Doc. 1, p. 5). On July 29, 2023, she also requested permission from Dr. Meyer to administer pain medication (*Id.*). Although Dr. Meyer denied the request, there is simply no indication that Anders acted with deliberate indifference. Thus, any claim for Anders's alleged failure to provide pain medication is **DISMISSED without prejudice**.

**Count 2**

Sillas also states a viable claim for deliberate indifference regarding his need for an ADA assistant. Sillas alleges that he requested an assistant to help him after the surgery on his left knee, but Tammy Stevens, Leslie Kluge, and Dr. Percy Meyer specifically denied his requests. He also alleges that Stevens denied ADA assistant positions as an inmate job, despite the position being offered at other facilities (Doc. 1,

10

p. 6). Without an ADA assistant, Sillas alleges that he had to take a shower on his own, which led to his fall and injury of his right knee. Thus, Count 2 shall proceed against Stevens, Kluge, and Meyer.

**Count 3**

Sillas's allegations also state a viable ADA and/or RA claim for defendants' failure to provide Sillas with an ADA assistant after his surgery. *Lacy v. Cook County, Illinois*, 897 F.3d 847, 853 (7th Cir. 2018). The claim cannot proceed against the individual defendants, however, because individual employees of IDOC cannot be sued under the ADA. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012). The proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670, n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). As such, Latoya Hughes, the current IDOC Director, will be **ADDED** to the case, in her official capacity, as the proper defendant for Sillas's ADA and/or RA claim.

**Count 4**

Sillas also states a viable retaliation claim in Count 4. He alleges that in response to his grievances regarding his healthcare, Rebecca Anders, Melissa Olge, and Debra Cram denied him access to the healthcare showers and the observation room for therapy. They also refused to assist Sillas with his therapy exercises. At this stage, that is enough to state a retaliation claim. *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted). Thus, Count 4 shall proceed against Rebecca Anders, Melissa Olge, and Debra Cram.

**Count 5**

Sillas also states a viable claim against Wexford Health Sources, Inc. for the company's unconstitutional policies and practices. Wexford can only be liable if it had a policy or practice that caused the constitutional deprivation alleged in the pleading. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653-4 (7th Cir. 2021); *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Here, Sillas alleges that Wexford had cost-saving policies that delayed outside treatment, therapy, and care. At this stage, that is enough to state a claim against Wexford.

**Count 6**

Sillas also states a claim pursuant to Illinois state law for intentional infliction of emotional distress. Where a district court has original jurisdiction over a civil action such as a Section 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact with the original federal claims." *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)).

As to Sillas's claim for intentional infliction of emotional distress, the state law claim derives from the same facts as his deliberate indifference claim. He alleges that the defendants delayed and denied him care which left him in extreme pain. Sillas further alleges that the defendants' actions in delaying and denying care was extreme, shocked the conscience, and caused extreme distress. Thus, Sillas adequately states a claim at this

stage. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). Count 6 shall proceed against Dr. Meyer, Stevens, Kluge, Olge, Anders, and Cram.

### Request for Preliminary Injunction

In Sillas's request for relief, he requests a hearing and preliminary injunction requiring Wexford to provide adequate medical treatment for Sillas's injuries, including off-site physical therapy (Doc. 1, p. 19). In order to obtain a preliminary injunction, the plaintiff has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012). *See also Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Sillas did not file a separate motion under Federal Rule of Civil Procedure 65(a) for a preliminary injunction, however, and he fails to set forth the reasons he is entitled to injunctive relief in his Complaint. His Complaint fails to indicate the current status of his condition, the treatment, if any, that he is currently receiving, and the involvement of the defendants in his current care. Thus, his request for a preliminary injunction is **DENIED without prejudice**.

### Motion for Counsel

As to Sillas's motion for counsel (Doc. 9), he notes that he has written several attorneys who declined to take his case. He also notes that he is a high school graduate but has no litigation experience and is a "layman" in the law. He also believes that expert testimony may be needed for the claims related to his medical care. But given the early stage of the litigation, it is difficult to accurately evaluate the need for the assistance of

counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[3] The case is in the early stages of the litigation process as Defendants have not yet been served or filed an Answer. Once Defendants file their Answer, the Court will enter a scheduling order with initial discovery deadlines, including deadlines related to the issue of whether Sillas exhausted his administrative issues. The Court finds that this is a straight-forward issue which Sillas should be able to handle on his own. But if Sillas experiences difficulties after the scheduling order is entered, he may renew his request for counsel at that time. For now, his request for counsel is **DENIED without prejudice**.

## Disposition

For the reasons stated above, Count 1 shall Tammy Stevens, Leslie Kluge, Rebecca Anders, Melissa Olge, Debra Cram, and Dr. Percy Meyer. Count 2 shall proceed against Stevens, Kluge, and Dr. Meyer. Count 3 shall proceed against Latoya Hughes, in her official capacity only. Count 4 shall proceed against Anders, Olge, and Cram. Count 5 shall proceed against Wexford Health Sources, Inc. and Count 6 shall proceed against Dr. Meyer, Stevens, Kluge, Anders, Olge, and Cram. All other claims and defendants are **DISMISSED without prejudice**. IDOC is **DISMISSED with prejudice**.

The Clerk of Court shall prepare for Defendants Tammy Stevens, Leslie Kluge, Rebecca Anders, Melissa Olge, Debra Cram, Dr. Percy Meyer, Latoya Hughes (official

---

[3] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

capacity only), and Wexford Health Sources, Inc.: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Sillas. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Sillas, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

*Because Sillas's claims involve his medical care, the Clerk of Court is DIRECTED to enter the Court's standard HIPAA Qualified Protective Order.*

If judgment is rendered against Sillas, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Sillas is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:  October 3, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**